# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | **JUDGE RICHARD L. SPEER** |
| Angela Barrett | ) | |
| | ) | Case No. 07-3283 |
| Debtor(s) | ) | |
| | ) | (Related Case: 05-37704) |
| Angela Barrett | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Great Lakes | ) | |
| | ) | |
| Defendant(s) | ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion to Dismiss Adversary Proceeding filed by Educational Credit Management Corporation. Within the time prescribed by Local Bankruptcy Rule 9013-1(b), the Debtor did not file a response to the Defendant's Motion. The Court has now had the opportunity to review the arguments presented to the Court and, for the reasons now explained, finds that the Motion of the Defendant to Dismiss should be Granted.

## FACTS

On August 1, 2005, the Debtor, Angela Barrett (hereinafter the "Debtor"), filed a petition in this Court for relief under Chapter 7 of the Bankruptcy Code. On November 17, 2005, the Court entered an order of discharge. On December 19, 2005, the Debtor's case was administratively closed.

Angela Barrett v. Great Lakes
Case No. 07-3283

Subsequently, on August 9, 2006, the Debtor entered into a consolidated loan agreement with the Defendant, Great Lakes. This agreement was made pursuant to the Federal Family Education Loan Program, known by its acronym FFELP. (Doc. No. 54, Ex. No. 3). Under this agreement, the Debtor was able to consolidate a number of loans she had incurred to finance her higher education between the years of 1994 and 1998. During these years, the Debtor concentrated her course of study on mental health/social work. Currently, the Debtor works full time as a case manager for a governmental agency engaged in family services.

On October 26, 2007, the Court, upon Motion of the Debtor, reopened her bankruptcy case. The Debtor, thereafter, commenced this adversarial proceeding on November 12, 2007, seeking to discharge her educational debt in accordance with the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). At the time the Debtor filed her complaint to determine dischargeability, Educational Credit Management Corporation (hereinafter "ECMC") held the note representing the consolidated loan agreement executed by the Debtor, the obligation having been previously assigned to ECMC by the Defendant. The total balance of the consolidated loan was represented to be approximately $83,000.00.

On May 6, 2009, a Trial was held to determine the dischargeability of the Debtor's consolidated student-loan obligation. The issue presented at the Trial was to be limited solely to whether, pursuant to 11 U.S.C. § 523(a)(8), repayment of the consolidated loan would constitute an "undue hardship," thereby warranting a discharge of the obligation. During the Trial, however, an additional issue was brought to the Court's attention that was not raised in either of the Parties' pleadings: whether the Debtor's postpetition consolidation of her educational debt excluded the debt from the scope of this Court's discharge order, notwithstanding the merits of the Debtor's claim of "undue hardship."

Page 2

At the conclusion of the Trial, the Court afforded both Parties the opportunity to submit supplemental pleadings on this matter. Subsequently, ECMC filed a Motion to Dismiss Adversary Proceeding, arguing that the Debtor's consolidation loan constituted a postpetition debt, not subject to this Court's order of discharge. The Debtor did not file a written response, but stood on her assertion made at the Trial that the Court should adjudicate the merits of her claim of "undue hardship" under § 523(a)(8).

## PROCEDURAL POSTURE

Before this Court is the Motion of the Creditor, ECMC, to Dismiss Adversary Proceeding pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion is brought against the Debtor's complaint to determine the dischargeability of her student-loan debt. Determinations concerning "the dischargeability of particular debts," are deemed by bankruptcy law to be a "core proceeding." 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court is accorded jurisdiction to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

Rule 12 of the Federal Rules of Civil Procedure is made applicable to this proceeding by Bankruptcy Rule 7012(b). In considering ECMC's Motion to Dismiss under Rule 12, this Court must find that it appears beyond doubt that the Debtor can prove no set of facts in support for her claim which would entitle her to relief. *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). When making this assessment, the Court must construe the complaint in the light most favorable to the Debtor and accept all factual allegations as true. *Allard v. Weitzman, (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

ECMC's Motion to Dismiss is predicated on the Debtor's postpetition consolidation of her student-loan obligation. According to ECMC:

Page 3

> A Chapter 7 debtor can only discharge debts that arose before the date of the order for relief. Therefore, any debt that arose after the order for relief is post-petition debt, and cannot be discharged in the general discharge. ECMC's Consolidation Loan is a post-petition debt that is not subject to discharge. Therefore, this adversary proceeding should be dismissed because the Court cannot grant the relief that Barrett seeks as to ECMC.

(Doc. No. 54, at pg. 4). Succinctly stated, it is the position of ECMC that the Debtor's consolidation of her student-loan debt created a postpetition obligation, thereby excluding the obligation from the scope of this Court's discharge order.

## LEGAL ANALYSIS

For a Chapter 7 debtor, a bankruptcy discharge is limited in two important respects: (1) only those debts which arose before the commencement of a debtor's case are subject to discharge; and (2) the debt to be discharged must not otherwise be excepted from discharge under any of the conditions set forth in § 523 of the Code.[1] *In re Sieger*, 360 B.R. 653, 657 (Bankr. N.D.Ohio 2007). These facets, setting forth the breadth of a Chapter 7 discharge, are statutorily prescribed in § 727(b) which provides, *inter alia*:

> (b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, . . .

A debt discharged in accordance with this provision then relieves a debtor of any personal liability, imposed by law, to repay the obligation. 11 U.S.C. § 524(a).

---

[1] This rule is subject to some very limited exceptions. For example, damages arising from the postpetition rejection of a lease are treated as arising immediately prepetition, and thus subject to a court's order of discharge entered under § 727. 11 U.S.C. §§ 365(g)(1); 502(g). *See Miller v. Chateau Communities, Inc. (In re Miller)*, 282 F.3d 874, 878 (6th Cir. 2002).

Page 4

Angela Barrett v. Great Lakes
Case No. 07-3283

In this case, the Debtor, at the time she filed her petition for relief under Chapter 7 of the Code, was indebted to the Defendant, Great Lakes, for multiple loans she incurred to finance her higher education. Pursuant to § 523(a)(8), obligations incurred by a debtor to finance a higher education may only be discharged if excepting the debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependents.

Until a judicial determination is made of "undue hardship," educational debts are presumptively nondischargeable, meaning that it is incumbent on a debtor to bring an action to have a student loan adjudicated dischargeable, otherwise, the debt will not be subject to a court's order of discharge. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) (§ 523(a)(8) is "self-executing" so that "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt."). The record in this regard is not disputed.

At no time before the entry of this Court's order of discharge did the Debtor bring an action to have the court determine the dischargeability of her student-loan debt. Thus, because student loans are presumptively nondischargeable under § 523(a)(8), this Court's order of discharge, when entered on November 17, 2005, did not relieve the Debtor of her personal liability to pay her educational debts. *Clarke v. Paige (In re Clarke)*, 266 B.R. 301, 307 (Bankr. E.D.Pa. 2001).

Yet, unlike with several other categories of nondischargeable debts set forth in § 523(a), neither the Bankruptcy Code nor Rules provide a time limit for filing an action to have a student loan determined dischargeable on the basis of "undue hardship." *In re Daniels*, 34 B.R. 782, 784 (9th Cir. B.A.P. 1983). In fact, student loans fall within the category of debts for which the Bankruptcy Rules provide that a dischargeability determination "may be filed at any time." FED.R.BANKR.P. 4007(b). Consequently, the entry of an order of discharge does not prejudice a debtor's right to seek a later determination regarding the dischargeability of a student loan.

Page 5

Angela Barrett v. Great Lakes
Case No. 07-3283

Concerning § 727(b), however, a determination made by a court that a particular debt is dischargeable only serves to remove § 523 as a barrier to the debt's discharge. It does not affect the temporal breadth of § 727(b). This breadth, as stated, limits a Chapter 7 discharge to just those debts which arose prior to the time a debtor commenced their bankruptcy case.

Consequently, while a debtor may, after the entry of an order of discharge, bring an action to determine the dischargeability of a particular debt, the debt must STILL have been in existence prior to the commencement of the bankruptcy case in order for the debt to be encompassed within the scope of a court's order of discharge. Therefore, even assuming for the moment that the repayment of the Debtor's student loan would, within the meaning of § 523(a)(8), impose upon her an "undue hardship," a salient question still remains: whether, in the nomenclature of § 727(b), the debt "arose" before the case was commenced?

A debt arises, for purposes of § 727(b), when a creditor would, within the meaning of bankruptcy law, have a claim against the debtor. *See In re Dean*, 317 B.R. 482, 485-486 (Bankr. W.D.Pa. 2004). A claim is defined in § 101(5)(A) as a "right to payment," which the Supreme Court has held means "nothing more nor less than an enforceable obligation . . . ." *FCC v. Nextwave Personal Communications*, Inc., 537 U.S. 293, 294, 123 S.Ct. 832, 834, 154 L.Ed.2d 863 (2003). In turn, whether an enforceable obligation exists is generally determined by looking to applicable nonbankruptcy law. *In re Okura & Co. (America), Inc.*, 249 B.R. 596, 602-03 (Bankr. S.D.N.Y. 2000).

Under applicable law, here the Federal Family Education Loan Program,[2] the consolidation of federally insured student loans is governed by 20 U.S.C. § 1078-3. Under this statute, it is provided: "Loans made under this section which are insured by the Secretary shall be considered to

---

[2] 20 U.S.C. § 1071 – § 1087-4.

Page 6

be *new loans* made to students for the purpose of section 1074(a) of this title." 20 U.S.C. § 1078-3(e) (emphasis added). It is further provided in this statute that, upon consolidation, liability on the loans consolidated is discharged. In relevant part, it is set forth in § 1078-3(b)(1)(D) "that the proceeds of each consolidation loan will be paid by the lender to the holder or holders of the loans so selected *to discharge the liability on such loans*[.]" (emphasis added).

Taken together, these provisions can only be construed as showing that, when a student-loan debtor undertakes to consolidate their educational obligations, a new debt would 'arise' for purposes of § 727(b). Hence, when only the FFELP is considered, this conclusion must follow: Where student-loans are consolidation postpetition, a fact which is undisputed in this case, the consolidated debt would, having arisen after the commencement of the case, be excluded from discharge by virtue of § 727(b).

This same conclusion was reached in the case of *Clarke v. Paige (In re Clarke)*, where the court, in addressing the above sections of the FFELP, set forth that the "plain language of these sections thus makes it clear that federal consolidation loans are new agreements which discharge the liabilities of the old loans and create their own obligations." 266 B.R. 301, 307 (Bankr. E.D.Pa. 2001). Largely based on this fact, the court in *In re Clarke* then concluded that "the only loan now in existence is the Consolidation Loan, a post-petition debt which is nondischargeable under 11 U.S.C. § 727(b)." *Id.* at 309. Even setting aside the FFELP, straightforward contractual principles support the conclusion that the Debtor's student-loan obligation arose, for purposes of § 727(b), at the time she consolidated educational debt.

A student-loan agreement is a contract. *See* 34 C.F.R. § 682.200 et seq. Under contract law, parties may agree to substitute a later agreement for one or more earlier agreements. This is known as a novation, which is defined as "the substitution of a new obligation for an existing debt or obligation, thereby extinguishing the latter." 30 Williston on Contracts § 76:1 (4th ed.).

Page 7

The effect of a novation is thus the creation of a new contract. *Id.* This is contrast to the modification of a contract which alters certain portions of a contract, but leaves the original agreement intact. 17A Am. Jur. 2d Contracts § 507. As a new contract, a novation, as opposed to a contract's modification, will start anew any temporal reference point – for example, a statute of limitations.

It may be said, therefore, that a debt "arises," for purposes of § 727(b), at the time of a contract's novation. It has been recognized in this regard that a debtor's consolidation of their student loans effectuates a novation which is comprised of four elements: (1) a previous valid obligation; (2) an agreement between the parties to abide by the new contract; (3) a valid new contract; and (4) the extinguishment of the old obligation by the substitution of the new one. *In re Buwana*, 338 B.R. 441, 446 (Bankr. D Colo. 2004). Consistent with these elements, the Court can see no reason why the Debtor's consolidation of her student loans would not, as opposed to a modification, effectuate a novation, thereby giving rise to a postpetition debt.

Concerning the first three elements for a novation, it can be assumed that, at the time her student loans were first incurred, the Debtor had entered into a valid contractual relationship for the extension of credit to finance her higher education. The Debtor also does not dispute the validity of the contractual arrangement underlying her consolidated loan and her duty to abide by its terms. Finally, in conformance with the last element for a novation, the original student loans taken by the Debtor were intended to be extinguished, with the consolidated loan agreement entered into by the Debtor being predicated on the initial lenders receiving a "Payoff Amount." (Doc. No. 53, Ex. C).

Page 8

Angela Barrett v. Great Lakes
Case No. 07-3283

Although different reasoning has been employed, this approach, of finding that a debtor's consolidation of their student-loan debt creates a new debt, has been widely applied.[3] Most significantly for purposes of this decision, in the case of *Rudnicki v. Southern College of Optometry (In re Rudnicki)*, the Bankruptcy Appellate Panel for the Sixth Circuit held that the relevant date for purposes of determining THE dischargeability of a student-loan obligation is the date when the consolidated loan first became due. 228 B.R. 179, 181 (6th Cir. B.A.P. 1999).

In *In re Rudnicki*, the issue before the court was whether the seven-year period of nondischargeability for student loans under 11 U.S.C. § 523(a)(8)(A) was measured from the date the original loans first became due or from the date the consolidated loan first became due. Until 1998, student loans, in addition to the existence of "undue hardship," could be discharged if the loan had been due for more than seven years. Citing to those provisions of FFELP, as discussed earlier in this Decision, the court in *In re Rudnicki* set forth:

---

3
-*Hiatt v. Ind. State Student Assistance Comm'n*, 36 F.3d 21, 23 (7th Cir. 1994) (a consolidation student loan is considered a "new, distinct debt");
-*Educ. Credit Mgmt. Corp. v. McBurney (In re McBurney)*, 357 B.R. 536, 539 (9th Cir.B.A.P. 2006) ("the Consolidation Loan is a post petition debt. Generally speaking, a chapter 7 debtor can discharge only debts that arose before the date of the order for relief");
-*Resurrection Medical Center v. Lakemaker, (In re Lakemaker)*, 241 B.R. 577, 581 (Bankr. N.D. Ill. 1997) ("A consolidation loan is considered to be a new loan which pays the balances owed on previous loans, extinguishing the original loans and all rights and duties thereunder, and creating new rights and obligations in the new loan");
-*Martin v. Great Lakes Higher Educ. Corp. (In re Martin)*, 137 B.R. 770, 772 (Bankr. W.D.Mo. 1992) ("The statutory language is clear that a consolidated loan is considered a new loan for educational purposes under the federally insured student loan program . . . and, as expressly provided by 20 U.S.C. § 1078-3(b)(1)(D), the old notes were discharged");
-*In re Clarke*, 266 B.R. 301, 309 (Bankr. E.D. Penn. 2001) (debtor's consolidated student loan is a new "debt [that] is not dischargeable under 11 U.S.C. section 727(b)").

Page 9

> This Panel is persuaded that consolidation of [the debtor's] loan extinguished the original promissory notes, and that the seven year period in § 523(a)(8)(A) began when the consolidated loan first became due on January 22, 1989. When [the debtor] consolidated his student loans, he received a new loan from [the creditor], the proceeds of which paid in full his original educational loans. The only student loan debt owed by [the debtor] at the bankruptcy petition was the consolidated loan. The consolidated loan first became due within seven years of bankruptcy and is not dischargeable under § 523(a)(8)(A).

*Id.* at 181.

While this holding of *In re Rudnicki* was based on the now defunct seven-year rule of § 523(a)(8), the Court can see no reason, and was not offered any, why its holding would not be equally applicable to an "undue hardship" determination. *See Clarke*, 266 B.R. at 308, fn. 8 (observing that, while case law has addressed the issue of consolidation in the context of the no longer applicable seven-year rule of § 523(a)(8), "their holding, that the consolidation loan extinguishes the original loan, is still valid."). Consequently, when the holding of *In re Rudnicki* is applied here, the Court is again faced with the conclusion that the Debtor's consolidation of her student-loan debt, occurring postpetition, gave rise to a debt which is not subject to discharge pursuant to § 727(b).

In summation, the Court finds that under the FFELP and general principles of contractual law, as well as precedent set by other courts, a debtor's consolidation of their student loan effectuates a new debt for purposes of determining when a debt arose for purposes of § 727(b). Therefore, in this case, the Debtor's postpetition consolidation of her student-loan debts created a new debt which, pursuant to 11 U.S.C. § 727(b), is not subject to this Court's order of discharge as entered on November 17, 2005. A couple of final notes, however.

Angela Barrett v. Great Lakes
Case No. 07-3283

First, pursuant to § 523(b),[4] this decision does not prejudice the Debtor's right, in a subsequent bankruptcy, to seek a dischargeability determination of her student-loan debt. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 446 (Bankr. N.D.Ohio 2003) ("no preclusive effect is given in a subsequent bankruptcy to any nondischargeability determination made on a student-loan obligation in a prior bankruptcy case."). Second, the Debtor still has available remedies outside of the bankruptcy forum for obtaining relief on her student-loan debt. *See* 20 U.S.C.A. § 1098e (income based repayment plan); 20 U.S.C. § 1087e(d)(1) (income contingent repayment plan).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

---

[4]

(b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

Page 11

Angela Barrett v. Great Lakes
Case No. 07-3283

Accordingly, it is

**ORDERED** that the Motion of Educational Credit Management Corporation to Dismiss, be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that this adversary proceeding is hereby DISMISSED.

Dated: August 11, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 12